UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE SEREN FASHION ART AND
INTERIORS, LLC, et al.,

                  Plaintiffs,

-against-

B.S.D. CAPITAL, INC. d/b/a LENDISTRY
SBLC, LLC, et al.,

                  Defendants.

---

23-CV-2349 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs The Seren Fashion Art and Interiors, LLC ("Seren Fashion") and Sehra Waheed ("Waheed," together with Seren Fashion, "Plaintiffs") bring this action against B.S.D. Capital, Inc. d/b/a Lendistry ("B.S.D."), Lendistry SBLC, LLC ("Lendistry"),[1] Kent Monfore and Kymani Smith (collectively, "Defendants") alleging breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement and negligence, related to a denied loan application. Defendants now move to dismiss the Amended Complaint in its entirety, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons herein, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

---

[1] Plaintiffs incorrectly named B.S.D. and Lendistry as B.S.D. Capital, Inc. DBA Lendistry SBLC, LLC. Lendistry is a separate entity and a wholly owned subsidiary of B.S.D. ECF No. 39 at 1 n.1.

Waheed is an artist, interior designer, creative stylist and the founder and sole member of Seren Fashion. ECF No. 30 ("Am. Compl.") ¶¶ 14–15. Lendistry is a Community Development Financial Institution and a member of the Federal Home Loan Bank of San Francisco that provides lending services to small businesses. *Id*. ¶¶ 19, 24. Lendistry is approved to offer Small Business Administration ("SBA") loan products, through which Lendistry makes a loan and the SBA provides the government's guaranty that the SBA will repay up to 85% of any loss in case of default. *Id*. ¶¶ 22–23.

On or around September 20, 2022, Waheed filed for a Lendistry loan program and applied for an SBA loan for Seren Fashion. *Id*. ¶ 30. Subsequently, a Lendistry Intake Specialist requested certain documents from Waheed, which Waheed submitted. *Id*. ¶¶ 31–32. The Lendistry Intake Specialist replied that Waheed's file would move forward for review. *Id*. ¶ 33. On October 7, 2022, a Lendistry Business Development Representative, Demetrius Jackson, emailed Waheed, telling her that he was assigned to help her in the loan application process. *Id*. ¶ 34. Approximately two weeks later, Jackson again emailed Waheed, telling her that "he was unable to obtain some exceptions for her business." *Id*. ¶ 35. He wrote that he could not move forward in the process and that his best advice was for Waheed to get her credit score up and apply the next year after filing her 2022 tax return for her business. *Id*.

Within a few days, Waheed increased her credit score and reapplied for a loan. *Id*. ¶ 37. A different Lendistry Intake Specialist submitted Waheed's application, including the required documentation. *Id*. ¶ 38. On October 27, 2022, Smith, another Lendistry Business Development Representative, emailed Waheed to state that he would be her primary point of contact during that stage of the application process. *Id*. ¶ 39. His "plan was to get her application to the final steps, which involved his lending team approving the loan request." *Id*. On October 31, 2022,

Smith told Waheed that he required additional details from her, which she provided. *Id*. ¶¶ 40–41.

On November 3, 2022, Waheed received a Letter of Intent ("LOI") from Lendistry. *Id*. ¶¶ 44–45. Also on November 3, 2022, Waheed emailed Smith asking for a confirmation of direct rent payment to her landlord. *Id*. ¶ 47. The next day, Smith replied that he could not produce an offer letter other than the LOI. *Id*. ¶ 48. Waheed then informed Smith that the landlord agreed to let her move in. *Id*. ¶ 50. Smith replied that that was "good news." *Id*. Nearly two weeks later, Smith told Waheed that he would ask his boss for guidance as to the appropriate way to accommodate Waheed's request that rent be paid directly to the landlord. *Id*. ¶ 59.

On November 4, 2022, Lendistry sent Waheed an invoice for a good faith deposit of $1,500, which she paid immediately. *Id*. ¶ 51.

On November 9, 2022, Smith told Waheed that there were some concerns with her tax documents and advised her to reach out to her tax consultant about her 8825 form and 1040 form. *Id*. ¶¶ 52–53. After Waheed sought clarification, Smith confirmed that he was referring to her 8821 form, not her 8825 form. *Id*. ¶¶ 54–55.

On November 15, 2022, Smith told Waheed that he had moved her application to his deposit team, where a credit analyst had begun the next phase of processing the application. *Id*. ¶ 58. During a phone conversation two days later, Smith said "everything looked 'beautiful,' that it should be 'okay,' and he didn't see any reason why Ms. Waheed should not make the initial deposit and one month's rent payment of $15,000 to her Landlord, and Lendistry would pay the remaining balance of $90,000 for advance space rent directly to landlord." *Id*. ¶ 60. He also said that Waheed's credit score was in the mid-700s, "so it all looked good." *Id*.

Smith emailed Waheed on November 23, 2022 to tell her that Lendistry had requested information from the IRS to confirm that Waheed's tax documents were accurate. *Id*. ¶ 61. Smith also explained that the "application was in the hands of Lendistry's credit team who would schedule the closing . . . since Ms. Waheed was *already approved*." *Id*. ¶ 62. He also stated that the underwriters would review her credit to "finalize the process and continue on to the closing; and that he will try to get a detailed explanation if there was any problem." *Id*.

The same day, Waheed read online that her application was denied and asked Smith to check on the status of her application, as Waheed believed she was approved with the LOI. *Id*. ¶¶ 63–64. Smith confirmed that her application was denied. *Id*. ¶ 65. Smith told Waheed that her tax returns provided did not match the transcripts. *Id*. ¶ 69. Jacksonh explained to Waheed that Waheed put down three different dates for when her business was established, which "was concerning to the SBA team as it was not consistent with one entity." *Id*. ¶ 72.

Waheed alleges that her application was denied because Lendistry's department did not fill in information correctly. *Id*. ¶ 67. Waheed told Smith that her accountant thought that Smith incorrectly wrote information on the 8821 form. *Id*. ¶ 66. Waheed alleges that Jackson failed to ensure that all information in the application was corrected and matched Waheed's tax returns. *Id*. ¶ 77. Waheed also alleges that Jackson incorrectly inserted Waheed's date of birth on her application. *Id*.

On December 1, 2022, Waheed received an email from Lendistry regarding a refund of $1,350 from the $1,500 good faith deposit she made. *Id*. ¶ 70. Waheed claims that she did not receive an explanation about why she was not getting the full amount and what had happened to the remaining balance. *Id*.

Subsequently, on February 15, 2023, Plaintiffs filed the Complaint in New York County Supreme Court. ECF No. 5. Defendants removed the case to federal court on March 20, 2023, citing diversity jurisdiction. ECF No. 1. On May 23, 2023, Defendants filed a motion to dismiss. ECF No. 27. In response, Plaintiffs filed the Amended Complaint. ECF No. 30. On July 20, 2023, Defendants filed the instant motion. ECF No. 38.

## LEGAL STANDARD

Defendants' motion to dismiss is brought pursuant to Rules 9(b) and 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

With respect to claims alleging fraud, Rule 9(b) imposes a heightened pleading standard. Such claims must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff is required to "(1) specify the statements that the plaintiff contends

were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal citation omitted). Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *See, e.g.*, *id*. at 292–93 (finding that the complaint failed to plead facts with the requisite particularity to allege fraud and affirming the district court's dismissal of the claims for aiding and abetting fraud).

## DISCUSSION

The Court first analyzes the breach of contract claim, followed by the claims for breach of the covenant of good faith and fair dealing, fraudulent inducement and negligence. As to all four, the Court finds that Plaintiffs failed to state a claim.

### I. Plaintiffs Fail to State a Claim for Breach of Contract

Plaintiffs' first count alleges that Defendants materially breached a contract between Plaintiffs and Defendants. Am. Compl. ¶¶ 82–87. Defendants contend that the LOI was not a contract and "imposed no obligation to make a loan." ECF No. 39 ("Defs.' Mem.") at 1. Plaintiffs do not dispute this. *See* ECF No. 44 ("Pls.' Mem.") at 12–13. Instead, Plaintiffs argue that there was an "implied contract" between Plaintiffs and Defendants: "an agreement that Plaintiffs will provide all necessary information and documents for the loan approval, and that Defendants will instruct the Plaintiffs, advise and correctly fill out and submit Plaintiffs' documents for a business loan application approval." *Id.* at 13; *see also* Am. Compl. ¶ 83 ("Plaintiffs and Defendants entered into an agreement, as Plaintiffs requested and Defendants agreed to advise the Plaintiffs and to complete and submit all the required documents for the business loan application.").

To state a claim for breach of contract under New York law,[2] "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 142 (2d Cir. 2011)). The threshold question here is whether a contract was formed between the parties. Thus, the Court will analyze whether there was an implied contract between Plaintiffs and Defendants, and if so, whether the contract was breached.

An implied contract requires the same elements as an express contract, including consideration, mutual assent, legal capacity and legal subject matter. *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999). It also requires a showing that there was a "meeting of the minds." *I.G. Second Generation Partners, L.P. v. Duane Reade*, 793 N.Y.S.2d 379, 382 (N.Y. App. Div. 2005). Under New York law, "a contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir. 2009) (quoting *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975)). An implied contract "is as binding as one that is express.'" *Id*. (quoting *Maas*, 721 N.E.2d at 970).

Plaintiffs have not plausibly alleged an implied contract with Defendants, as there are no allegations, other than conclusory statements, demonstrating a mutual assent to contract or consideration. "The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *Maas*, 721 N.E.2d at

---

[2] The parties assume that New York law governs this action, and "implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civ. & Env't Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

970 (citing Restatement (Second) of Contracts § 19). New York law holds that "[i]n determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977). "In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to obtain." *Id.*; *see also Zheng v. City of New York*, 973 N.E.2d 711, 716–17 (N.Y. 2012).

Plaintiffs allege no facts indicating Defendants' assent to be bound by any implied contract. Although Plaintiffs state what they believe the implied contract to be – that there was an agreement that Plaintiffs would provide all necessary information and documentation for the loan approval and in exchange, Defendants would instruct and advise the Plaintiffs, and correctly fill out and submit Plaintiff's documents for loan application approval – Plaintiffs' Amended Complaint is devoid of any facts demonstrating that Defendants intended to be bound by such terms. Instead, the allegations in the Amended Complaint demonstrate that Defendants were not seeking to be bound by any agreement with Plaintiffs. *See, e.g.*, Am. Compl. ¶ 45 ("Lendistry has shown interest in offering a loan opportunity . . . we hope to be a part of your businesses progressive growth."); *id.* ¶ 48 (Smith "could not produce an offer letter other than the letter of interest.").

A loan application and discussions with a lender about the requirements necessary to obtain that loan, as Plaintiffs have alleged here, are insufficient to give rise to a valid and binding contract, express or implied. *See Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 318 (N.Y. Sup. Ct. 2011) (finding that there was no implied contract where plaintiff only alleged that a publishing

company solicited the plaintiff's manuscript); *see also Gertler v. Goodgold*, 487 N.Y.S.2d 565, 568 (N.Y. App. Div.), *aff'd*, 489 N.E.2d 748 (N.Y. 1985) (no cognizable contract action where the complaint merely "recites a litany of . . . grievances" and is "devoid of any reference to the contractual basis" for the rights asserted); *Zheng*, 973 N.E.2d at 723–24 (finding that in light of the totality of the evidence, when the City "used the word 'guarantee' in the certification letter or promotional materials," it did not intend to "make a contractual guarantee of payment to landlords").

Plaintiffs also do not allege any facts indicating consideration on the part of Defendants. Under New York law, "[c]onsideration is defined as either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor." *Greenberg v. Greenberg*, 646 F. App'x 31, 32 (2d Cir. 2016) (quoting *Startech, Inc. v. VSA Arts*, 126 F. Supp. 2d 234, 237 (S.D.N.Y. 2000)); *see also Anand v. Wilson*, 821 N.Y.S.2d 130, 131 (N.Y. App. Div. 2006) ("Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him."). Plaintiffs do not allege any facts indicating a bargained for gain or detriment. Defendants would not gain anything from Plaintiffs submitting the necessary information for a loan; Defendants would only gain from actually approving the loan.

Accordingly, the Court finds that there was no intent by Defendants to enter a contract and no consideration. Therefore, there was no implied contract. As such, there can be no breach of contract. Plaintiffs' cause of action for breach of contract is dismissed.

## II. Plaintiffs Fail to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' second count alleges that Defendants breached the covenant of good faith and fair dealing by failing to perform their duties satisfactorily and submit correctly filled out forms for the loan application. Am. Compl. ¶¶ 88–95. Under New York law, parties to a contract "are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (internal citation omitted). There is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Id*. at 81. Therefore, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

Here, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is duplicative of Plaintiffs' claim for breach of contract, with Plaintiffs even pointing to their analysis for breach of contract to support their breach of implied covenant claim. *See* Pls.' Mem. at 18. As such, the claim for breach of the implied covenant is dismissed.

## III. Plaintiffs Fail to State a Claim for Fraudulent Inducement

Plaintiffs' third cause of action is for the tort of fraudulent inducement. Am. Compl. ¶¶ 96–102. To state a claim for fraud under New York law, a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d

10

153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).

Additionally, Rule 9(b) sets forth a heightened pleading standard for allegations of fraud, requiring that claims of fraud be "stated with particularity." In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Id*. (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir.1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiffs allege that Defendants misrepresented that Plaintiffs' loan application would be accepted and encouraged her to enter a lease agreement with her landlord. Am. Compl. ¶ 97. To support this, Plaintiffs allege that Smith told Waheed that "everything looked 'beautiful,' that it should be 'okay,' and he didn't see any reason why Ms. Waheed should not make the initial deposit and one month's rent payment of $15,000 to her landlord, and Lendistry would pay the remaining balance of $90,000." *Id*. ¶ 60. Smith also allegedly stated that Lendistry's Credit Department would contact Waheed directly and "that her score was in [the] mid-700s so it all looked good." *Id*. Plaintiffs further allege that at this time, Smith said Waheed was "already approved." *Id*. ¶ 62. But in the same conversation, Smith also stated that "he will try to get a detailed explanation if there was any problem." *Id*.

11

First, these statements, even construed in a light most favorable to Plaintiffs, do not demonstrate that Defendants falsely stated that Plaintiffs' requested loan would ultimately be approved. By their own admission, each of Plaintiffs' allegations included qualified language indicating that Defendants had not made a guarantee of final approval. Plaintiffs allege that Defendants used language like "it should be okay" and that Smith would "try to get a detailed explanation if there was any problem." These statements demonstrate the qualified nature of any alleged misrepresentation that Waheed's loan would be approved.

Second, even if Plaintiffs plausibly alleged that these statements misrepresented the material fact that Plaintiffs would receive a loan and that Defendants made these statements knowing they were false, Plaintiffs do not allege any facts that create a plausible inference of fraudulent intent. Plaintiffs allege no facts suggesting that Defendants had a motive to commit fraud. No reason is provided why Defendants would tell Plaintiffs that the loan would be approved when it would not, or what Defendants would gain from that. Plaintiffs do not explain why Defendants would want to induce Plaintiffs into entering a lease agreement. Moreover, at the time these statements were made on or around November 17, 2022, Plaintiffs had already paid Lendistry the good faith deposit nearly two weeks prior. *See* Am. Compl. ¶ 51, 58.

Third, Plaintiffs do not allege any facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. As such, Plaintiffs do not meet the heightened pleading standard for a fraud claim and the Court dismisses Plaintiffs' fraudulent inducement claim.

## IV.   Plaintiffs Fail to State a Claim for Negligence

To state a claim for negligence under New York law, Plaintiffs must demonstrate "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.

2015) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). The threshold question here is whether Defendants owed a duty of care to Plaintiffs. "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Id*. (quoting *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160, 162 (N.Y. 2001).

Plaintiffs have not alleged facts showing that Defendants owed Plaintiffs a duty of care. Plaintiffs simply assert that Defendants had a duty of care "to act in a reasonable and careful manner with the Plaintiffs in the performance of their obligations in connection with Plaintiffs' loan application and submission of correctly filled out documents," but do not cite any case law acknowledging this as a duty of care. Case law instead supports the proposition that a lender does not have a duty of care toward a loan applicant. *See Lombard*, 280 F.3d at 217; *see also Genna v. Sallie Mae, Inc.*, No. 11-CV-7371 (LBS), 2012 WL 1339482, at *4 (S.D.N.Y. Apr. 17, 2012) (finding that no fiduciary duty or duty as a result of a special relationship generally exists between a lender and a borrower); *Dobroshi v. Bank of Am., N.A*., 886 N.Y.S.2d 106, 109 (N.Y. App. Div. 2009) ("This court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature . . . ."). As such, Plaintiffs' claim for negligence is dismissed.

Because the Court has determined that Plaintiffs fail to state a claim for fraudulent inducement and for negligence, the Court declines to analyze whether the tort claims were impermissibly duplicative of the contract claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiffs' Amended Complaint is dismissed in its entirety. The Clerk of Court is directed to terminate ECF No. 38 and to close the case.

Dated: November 13, 2023
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge